COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Beales
Argued at Alexandria, Virginia


HEDGE EVERETT WASHINGTON, JR.

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1002-06-4                        JUDGE JAMES W. BENTON, JR.
                                                            JULY 24, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                           Jeffrey W. Parker, Judge

          Cindy Leigh Decker (Law Offices of Mark Voss, on brief), for
          appellant.

          Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
          Attorney General, on brief), for appellee.


       The sole issue presented by this appeal is whether the trial judge had the authority under

Code § 16.1-289 to modify an order, which committed a juvenile to the Department of Juvenile

Justice and simultaneously scheduled a hearing for review of the order, more than sixty days from

the date of entry of the order.  We hold that the judge did not err in concluding he was barred from

so doing.

                                          I.

       Hedge Washington, Jr., a juvenile, pled guilty to two misdemeanors in the juvenile and

domestic relations district court, and he conceded he violated probation.  After a judge of the

juvenile court committed Washington to the Department of Juvenile Justice for an indeterminate

period, Washington appealed to the circuit court.  Following a hearing in the circuit court, the trial

judge found that Washington had violated the terms of his probation, entered an order that

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"committed [Washington] to the Department of Juvenile Justice for an indeterminate period," and "further ordered that these cases be continued to the 1st day of February 2006 . . . for a review of the defendant's status." The order was dated December 19, 2005.

At the review hearing on February 1, 2006, the probation officer testified Washington had "done well" at the regional diagnostic center. She said the diagnostic center had recommended Washington's "length of stay [to be] 12 to 18 months with a recommendation to Shenandoah, which is a 10-bed facility . . . [that provides] more one-on-one with vocational and educational training." The probation officer explained that "if he remains committed today, that is where they plan to place him," provided a space was available. She indicated Washington could be released in nine months, but also disclosed the following:

> [PROBATION OFFICER]: As long as there's a review set, he will not go to a placement.
>
> [JUDGE]: He won't?
>
> [PROBATION OFFICER]: No, he won't because the Department of Juvenile Justice, after 60 days, the jurisdiction goes to the Department . . . . So after the 60 days is up, they determine when he's released, after the initial 60 days.

Although Washington's attorney asked the judge to "suspend the commitment and review it in 60 days," the judge believed he had "an intermediate choice," reasoning as follows:

> So I'm just not going to just send him back and with hopes that, well, he may show up at Shenandoah at some point and we've made all these assurances and recommendations to him and he's just left hanging, okay? I'm not going to have that happen, get lost in a cog in some big system. I want to know what's going on.
>
> So what I'm saying - - and if you find out that he's been transferred to Shenandoah sooner than that, now you can go ahead and send me a letter and advise me, and then I'd know things are moving along. But I want to know what's going on in this case. I don't want to be just placed in some kind of a bureaucratic rigmarole. I want to know what's happening.

At the conclusion of the hearing, the trial judge ordered "that [Washington's] commitment to the Department . . . be continued for an indeterminate period." Additionally, the judge ordered the following:

> [T]he Juvenile Probation Officer shall notify the Court and counsel in writing within thirty (30) days hereof of the date that the defendant is to be admitted to the Shenandoah Community Placement Program; if said date is not set within the 30-day period, counsel for the defendant is directed to praecipe the Court to place these cases on the docket for review.

On March 22, 2006, Washington's attorney filed a praecipe in accordance with the February 1, 2006 order, setting a review hearing on March 27, 2006. At that review hearing, the prosecutor contended the judge lacked authority to conduct the review, arguing Code § 16.1-289 prevented the judge from further reviewing the commitment because "the order of commitment in this case was December [19,] 2005" and more than sixty days had elapsed. Washington's attorney responded that Code § 16.1-297 required the judge to remand the matter to the juvenile court for final adjudication, and she argued the December 19, 2005 order was not a "final" order of commitment sufficient to divest the court of jurisdiction in the matter. Washington's attorney further argued that Washington had not been "finally committed" because the orders of December 19, 2005 and February 1, 2006 established the judge's intention to retain the case for further consideration.

The trial judge reluctantly ruled he did not have the authority to review Washington's commitment. This appeal followed.

## II.

Code § 16.1-289 provides as follows:

> The juvenile court or circuit court, as the case may be, of its own motion may reopen any case and may modify or revoke its order. The juvenile court or the circuit court shall before modifying or revoking such order grant a hearing after notice in writing to the complainant, if any, and to the person or agency having custody of

the child; provided, however, that this section shall not apply in the case of a child committed to the Department [of Juvenile Justice] after sixty days from the date of the order of commitment.

Washington contends the orders of December 19, 2005 and February 1, 2006 were not "final orders" for purposes of triggering the proviso of Code § 16.1-289. He argues the order's wording evinced that the trial judge "intended to continue jurisdiction over the matter" and had not completed his disposition. The Commonwealth responds that the trial judge entered "a final appealable order" on December 19 and, thus, "was divested of any power to revoke, modify or suspend Washington's commitment to [the Department] after 60 days."

A final order "disposes of the entire action and leaves nothing to be done except the ministerial superintendence of execution of the judgment." Super Fresh Food Markets v. Ruffin, 263 Va. 555, 560, 561 S.E.2d 734, 737 (2002); Alexander v. Morgan, 19 Va. App. 538, 540, 452 S.E.2d 370, 371 (1995). "[W]hether a judgment or decree is final 'must always be ascertained, not by inquiring what ought to have been done by the court, but by inspecting the terms of the judgment or decree and learning from its face what has been done.'" Hatke v. Global Indem. Co., 167 Va. 184, 189, 188 S.E. 164, 166 (1936) (quoting Burch v. Hardwicke, 64 Va. (23 Gratt.) 51 (1873)). The Supreme Court consistently has "stated that '[i]t is the firmly established law of this Commonwealth that a trial court speaks only through its written orders.'" Walton v. Commonwealth, 256 Va. 85, 94, 501 S.E.2d 134, 140 (1998) (quoting Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996)).

Washington argues the December 19, 2005 order was not a final order because the trial judge continued the matter "for a review of the defendant's status." We conclude that our decision in Richardson v. Commonwealth, 28 Va. App. 389, 391, 504 S.E.2d 884, 885 (1998), refutes this argument. There, the judge of the juvenile court committed a juvenile to the

Department and, within the same order, "scheduled a commitment review hearing." Id. at 390, 504 S.E.2d at 885.  We held as follows:

> A commitment review is not a re-examination of the underlying order of delinquency or commitment.  The delinquency or commitment order is a final order for purposes of appeal pursuant to Code § 16.1-296.  A commitment review permits the trial court to evaluate the utility of continuing the commitment in the light of post-commitment developments and circumstances.  Such an assessment is consistent with the juvenile law's paramount concern with the welfare of the child and family, the safety of the community, and protection of the rights of victims.  See Code § 16.1-227.

Id. at 391-92, 504 S.E.2d at 885.  We further held that whether to commit a juvenile to the Department is an issue "separate and distinct from" the issue to be decided at the review hearing, i.e. whether to modify, revoke or continue a juvenile's commitment.  Id. at 392, 504 S.E.2d at 886.

The December 19, 2005 order made a final disposition when it committed Washington to the Department.  Although the statute authorizes the trial judge to reopen the case and modify or revoke its commitment order, the statute expressly provides that the trial judge may not do so after sixty days from the order of commitment.  Code § 16.1-289.  Indeed, when the trial judge committed Washington to the Department on December 19, 2005, and indicated during that hearing he "want[ed] to see this case in 60 days," Washington's attorney recognized the significance of the timing of the hearing.  She properly responded, "it has to be, by statute, within the 60 days.  It can't go to day 61 or day 62.  It has to be within the 60 days."  However, following the review hearing on February 1, 2006, the trial judge continued Washington's commitment.  Because the trial judge did not modify or revoke the December 19, 2005 commitment order at that time, the trial judge had until February 17, 2006, sixty days from entry

of the commitment order, to act.  The statute gave the judge no authority to review the commitment order beyond that date.[1]

Washington additionally argues that neither the December 19, 2005 order nor the February 1, 2006 order "stated the order was final."  To be a final order, however, an "order [need] not recite on its face that it is a final order" where an examination reveals "it is the . . . final order by its terms."  Rose v. Jaques, 268 Va. 137, 144, 597 S.E.2d 64, 68 (2004); see James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002) (noting "that, from its very nature, an order granting a nonsuit" is a final order).  Cf. Estate of Hackler v. Hackler, 44 Va. App. 51, 61, 602 S.E.2d 426, 431 (2004) (holding that, despite the label "Final Order," the trial judge's order was not final for purposes of appeal because it specifically stated the judge "will end the cause" after he reviewed and approved a final accounting, which was not a ministerial act in that proceeding).

Washington further argues the order was not final because the thrust of the order indicated "the court intended to continue to exercise jurisdiction over the matter."  We agree that

---

[1] We believe the effect of the sixty-day limitation in Code § 16.1-289 is similar to that of the twenty-one-day limitation in Rule 1:1.  "Neither the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions on [or before] the twenty-first day after final judgment, is sufficient to toll or extend the running of the twenty-one day time period of Rule 1:1."  Ruffin, 263 Va. at 560, 561 S.E.2d at 737.  In a similar vein, the Supreme Court observed:

> Code § 53-272 authorizes the trial court, where a defendant convicted of a felony has been sentenced but not actually committed and delivered to the penitentiary, to suspend or modify the unserved portion of his sentence, or place the defendant on probation.  Thus, reading Rule 1:1 and Code § 53-272 together, we conclude that after the expiration of 21 days from the sentencing order if the prisoner has been committed and delivered to the penitentiary and no order has been entered within 21 days after final judgment suspending the sentence, the trial court has no further authority to suspend the sentence.

In Re: Dept. of Corrections, 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981).

the trial judge's statements at the February 1, 2006 hearing support Washington's view of the trial judge's intentions:

> "I'm going to go ahead and schedule this case for review in another 60 days, all right? I want to see where we are. I want to see if you're in Shenandoah. I want to see how that's working out.
>
>         *      *      *      *      *      *      *
> So I'm not going to just wash my hands of your case, I'm going to stay involved in it, all right, and see how things go. This court wants to see you ultimately go back with your aunt.

Notwithstanding the trial judge's intention to continue the matter, when he did not revoke or modify the commitment order, he had no authority to consider additional matters and issue rulings after February 17, 2006. See Code § 16.1-289; see also Ruffin, 263 Va. at 563, 561 S.E.2d at 738 (holding that an order entered within twenty-one days *after* entry of final judgment and stating the trial judge "would 'retain jurisdiction over this action . . . [to] consider and rule on' . . . [a] motion for reconsideration" was ineffective to extend the period of trial judge's jurisdiction because the order did not modify, vacate, or suspend final judgment).

For these reasons, we hold the trial judge did not err in ruling he lacked the authority to conduct the review on March 27, 2006, which was more than sixty days after entry of the commitment order, and in dismissing the commitment review.

Affirmed.